IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| v. : | CRIMINAL NO.  17-395 |
| ADRIAN BUSTAMANTE, : | |
|    a/k/a "Luis Gamboa," | |
|    a/k/a "Ricardo Navarro," : | |
|    a/k/a "Juan Maldonado-Carmona," : | |
|    a/k/a "Juan Francisco-Maldonado" : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by its attorneys Louis D. Lappen, United States Attorney for the Eastern District of Pennsylvania, and Michael T. Donovan, Assistant United States Attorney, respectfully files this sentencing memorandum regarding defendant Adrian Bustamante.

**I.      INTRODUCTION**

Defendant Adrian Bustamante, through counsel, pled guilty to both counts of the Indictment charging him with one count of illegal reentry in violation of 8 U.S.C. § 1326(a) and (b)(2), and one count of escape, in violation of the 18 U.S.C. § 751(a). These charges arose from defendant's presence in Philadelphia despite a previous deportation, and his escape from custody at the time of his arrest by a federal agent. Defendant Bustamante committed the offense charged in Count One after he had been deported twice and convicted of illegal reentry once.  Undeterred by his previous

removals, he returned to the United States, and was arrested by Philadelphia police for purchasing/receiving a controlled substance. Despite a detainer lodged by Immigration and Customs Enforcement agents, Bustamante was released from custody. A couple days later he was arrested by an ICE agent but he managed to escape and remained as a fugitive for several days. After an intensive search by federal and local law enforcement, Bustamante was captured. In light of the seriousness of the offense and the aggravating factors, the government recommends a sentence at the high end of the guideline range.

## II. LEGAL STANDARD

This Court must follow a three-step process when sentencing a defendant: (1) calculate the defendant's guideline sentence, (2) formally rule on any departure motions and state how any departure affects the defendant's guideline calculation, and (3) exercise discretion by separately considering the relevant factors outlined in 18 U.S.C. § 3553(a) when setting the sentence. *United States v. Handerhan*, 739 F.3d 114, 120 (3d Cir. 2014); *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006).

At the third step of the sentencing process, the Court must consider the advisory guideline range along with all the pertinent § 3553(a) factors in determining the final sentence. "The record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006)

(citations omitted); *see also, United States v. Thornhill*, 759 F.3d 299, 311 (3d Cir. 2014).

The government explains below its view of the proper consideration of the advisory guideline range and of the § 3553(a) factors, which support a sentence of imprisonment of at the high end of the guideline range.

## III. BACKGROUND

Defendant Bustamante pleaded guilty to the Indictment which charged him with one count of illegal reentry and one count of escape.

### A. Count One – Illegal Reentry

The defendant is a native and citizen of Mexico. On December 13, 2005, defendant was removed from the United States pursuant to a Final Administrative Removal Order, which ordered him removed to Mexico. During a November 4, 2008, interview with an Immigration and Customs Enforcement ("ICE") agent, Bustamante stated he entered the United States in February of 2006. On February 10, 2009, Bustamante was charged by complaint and warrant with Illegal Re-entry, in violation of 8 U.S.C. § 1326(a) & (b)(2), in the District of New Jersey. On May 5, 2009, he was charged by Indictment with the same offense. On July 15, 2009, he pleaded guilty before District Court Judge Noel L. Hillman. Bustamante was sentenced to 57 months imprisonment. On June 13, 2013, Bustamante was removed from the United States to Mexico.

After his second arrest in this matter, on June 20, 2017, ICE officers read Bustamante his Constitutional rights in the English language and he agreed to waive

them by signing a Declaration of Rights/Waiver in the English language. Bustamante admitted that he was a native and citizen of Mexico. Bustamante stated that he had never been admitted into the United States as a legal permanent resident. He admitted that he was last deported from the United States in 2013 and that he re-entered the United States in 2016 on foot into California without inspection and admission by an immigration officer. Bustamante admitted that he did not have any document that permitted him to legally reside in the United States. Finally, he admitted that he did not obtain permission from the Secretary of the Department of Homeland Security or the Attorney General to re-enter the United States after his deportation.

### B. Count Two – Escape

On June 20, 2017, Bustamante was charged by complaint with Illegal Re-entry, in violation of 8 U.S.C. § 1326(a) & (b)(2), in the Eastern District of Pennsylvania, in case 17 M 836. A warrant was issued for his arrest. On June 22, 2017, an ICE officer sought to locate Bustamante at a business in National Park, New Jersey. The ICE officer spoke with the owner of the business to see if he knew Bustamante. The owner indicated that Bustamante worked for him and that Bustamante would be returning to the business shortly. Bustamante arrived at the business a short time later. The ICE officer identified himself to Bustamante and placed him under arrest. The ICE officer searched Bustamante and took possession of his property. Bustamante was handcuffed behind his back and placed into the back seat of an uncaged ICE vehicle.

Bustamante advised the ICE officer that he was suffering side effects of narcotics and the vehicle was too hot. At that time, the ICE officer started the vehicle to provide air conditioning. While the ICE officer was waiting for local police assistance, he was speaking to the business owner. While the ICE officer was distracted and facing away from the vehicle, Bustamante freed himself, climbed into the front seat, and stole the ICE vehicle. Bustamante left the area and eventually traveled to Philadelphia where he disposed of certain property from the vehicle, including a ballistic vest.

On June 26, 2017, agents were conducting an operation in Philadelphia seeking to apprehend Bustamante. Agents were surveilling a residence on Whitaker Street and observed Bustamante come out and go back into the residence. A short time later, after a discussion with a woman who lived at the residence, agents searched the house and found Bustamante hiding in a basement closet under a blanket.

## IV.    SENTENCING CALCULATION

### A.    Statutory Maximum Sentence

The statutory maximum and mandatory minimum sentences for the charges in the Indictment are:

<u>Count One:</u>  a maximum of 20 years imprisonment, a maximum of 3 years of supervised release, a $250,000 fine, and a $100 special assessment;

Count Two:  a maximum of 5 years imprisonment, a period 3 years of supervised release up to life supervised release, a $250,000 fine, and a $100 special assessment.

Total Maximum Penalty: a maximum of 25 years of imprisonment, a period of supervised release, a $500,000 fine, and a $200 special assessment.

### B. Sentencing Guidelines

The calculation of the total offense level for defendant Bustamante is as follows:

Count 1
| USSG § 2L1.2 | Base offense level | 8 |
| USSG § 2L1.2(b)(1)(A) | Commit offense after illegal reentry conviction | +4 |
| USSG S 2L1.2(b)(2)(C) | commit felony before first deportation | +6 |

Count 2
| USSG § 3C1.1 | *See* Application Note 8 | +2 |
| | | 20 |

| Guideline § 3E1.1 | Acceptance of responsibility | –3 |
| | | 17 |

The Presentence Investigation Report accurately calculates defendant's criminal history score as category III, which, when combined with a total offense level of 17, results in an advisory Guideline range of 30–37 months.

## V. GOVERNMENT'S SENTENCING RECOMMENDATION

### A. Sentencing Factors

A thorough consideration of all of the sentencing factors set forth in 18 U.S.C. § 3553(a) suggests that a sentence at the high end of the guideline range would be appropriate in this case.

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 133 S. Ct. 2072, 2083 (2013) (quoting *Freeman v. United States*, 131 S. Ct. 2685, 2692 (2011) (plurality opinion); ellipsis in original). "Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Peugh*, 133 S. Ct. at 2084. The Court went on to observe that the "federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.*

In addition, this Court must also consider all of the sentencing considerations set forth in § 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the

defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the kinds of sentence available; (6) the guidelines and policy statements issued by the Sentencing Commission; (7) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (8) the need to provide restitution to any victims of the offense.  18 U.S.C. § 3553(a).

    **B.**    **Application**

The relevant § 3553(a) factors will be discussed in turn.

    **1.**    **The Nature and Circumstances of the Offenses**

Defendant Bustamante returned to the United States illegally after twice being removed to Mexico, once in 2005 and once in 2013.  His most recent illegal reentry occurred despite a previous federal conviction for illegal reentry which resulted in a sentence of 57 months, followed by deportation.  This criminal history seriously aggravates this offense.  Defendant was well aware that his conduct was illegal and subject to federal prosecution when he reentered in 2016.  In addition, Bustamante's cynical ploy to escape by suggesting to the agent that he was overheating in a government vehicle demonstrates his disrespect for the law and willingness to double down on his illegal activity.  Bustamante's decision to escape caused harm to the agent whose vehicle Bustamante stole, and it also resulted in a significant disruption of local ICE operations due to the need to engage in intensive efforts to locate Bustamante and recover property that was stolen by Bustamante

during the escape. Bustamante should be given a sentence at the high end of the guideline range due to the seriousness of his offenses and his commitment to prolonging his illegal activity.

### 2. The History and Characteristics of the Defendant

The history and characteristics recounted in the Presentence Investigation Report demonstrate that Bustamante merits a serious sentence due to his previous convictions for a serious drug offense and illegal reentry, along with his willingness to reside illegally in the United States for extended periods of time, including after his removals in 2005 and 2013. Defendant's employment history indicates he has made some contribution to the community during his extended illegal residency in the Philadelphia area but his consistent record of arrests suggests his contributions have not been entirely positive. This history supports the need for a sentence of imprisonment at the high end of the guideline range.

### 3. The Need for the Sentence Imposed to Reflect the Seriousness of the Offenses, Promote Respect for the Law, and Provide Just Punishment

In this case, there is a need for a lengthy sentence to promote respect for the law and provide just punishment. The seriousness of the offense is aggravated by defendant's return to this country after two removals and a conviction for illegal reentry. His conduct demonstrates his complete disregard for the law. Bustamante returned to the United States despite certain knowledge that his actions were illegal and would subject him to additional prosecution. His criminal history, and particularly his immigration history, clearly demonstrate his disrespect for U.S. law.

A lengthy sentence is necessary to promote respect for the law, particularly because the defendant's has demonstrated his willingness to live his life contrary to law.

### 4. The Need for Adequate Deterrence and Protection of Public

This offense requires general deterrence and, as demonstrated by Bustamante's immigration history and criminal history, he is in need of specific deterrence. A sentence at the high end of the guideline range is necessary to send a clear message to Bustamante, and others similarly situated, that the law must be respected and followed, and that no one is above the law. This is particularly true in the case of Bustamante who has committed the same offense a second time. A sentence at the high end of the guideline range is also necessary to protect the public from further criminal conduct by Bustamante; he is a recidivist whose past suggests he will again reenter the United States in the future, and possibly commit other crimes while living here illegally.

### 5. The Need to Provide the Defendant with Training, Medical Care or Correctional Treatment

There is no demonstrated need to adjust the sentence in order to provide the defendant with needed educational or vocational training, medical care or additional treatment.

### 6. The Need to Avoid Unwarranted Sentence Disparities Among Similarly Situated Defendants

Adherence to the recommended guideline range is typically the best course for assuring that a sentence is consistent with those imposed nationwide on similarly

situated offenders. In this case, imposing a guideline sentence is the only means to avoid an unwarranted disparity. Therefore, a guideline sentence will serve the vital goal of uniformity and fairness. A sentence at the high end of the guideline range will reflect the specific aggravating factors outlined above.

### 7. Restitution

There is no restitution in this case.

### C. Supervised Release

A period of supervised release will also serve to provide an added measure of deterrence and protection. Generally, Section 5D1.1(c) of the Sentencing Guidelines, states a presumption against the imposition of supervised release for deportable aliens. However, the accompanying comment provides that a court should consider imposing a term of supervised release if the court determines it would provide an added measure of deterrence and protection. U.S.S.G. § 5D1.1(c), cmt.n.5. In imposing a term of supervised release on a deportable alien, the court

must

> 'explain and justify' the imposition of supervised release on a deportable immigrant. *Murray*, 692 F.3d at 281. It "must state the reasons in open court for imposing a [term of supervise release on a deportable immigrant] so that the appellate court is not left to speculate about the reasons." (citation omitted). This explanation "should directly address" the presumption against imposing supervised release "and provide the court's reasoning for taking a different course of action in the case before it." (citation omitted).

*United States v. Azcona-Polanco*, 865 F.3d 148, 153 (3d Cir. 2017).

As discussed *supra*, the defendant's criminal history and repeated returns to this country despite his deportations, demonstrate a willingness to commit crimes

- 11 -

and defy court orders directing his removal. Imposing a period of supervised release will subject defendant to immediate consequences should he choose to return to the United States in violation of the law. Given defendant's past conduct, the record supports the imposition of a period of supervised release.

## VI. CONCLUSION

In sum, all of the appropriate considerations of sentencing favor the imposition of a sentence at the high end of the guideline range. For the reasons stated above, given the seriousness of Bustamante's criminal conduct, the government recommends that the Court impose a sentence at the high end of the guideline range, and a lengthy term of supervised release.

Respectfully submitted,

LOUIS D. LAPPEN
United States Attorney

*/s/ Michael T. Donovan*
Michael T. Donovan
Assistant United States Attorney

Dated: January 10, 2018

## CERTIFICATE OF SERVICE

I hereby certify that, on the below date, the **Government's Sentencing Memorandum** was served by transmitting a copy to defendant's counsel, Nancy MacEoin at the email address: nancy_maceoin@fd.org.

　　　　　　　　　　　　　　　　　　　　　*/s/ Michael T. Donovan*
　　　　　　　　　　　　　　　　　　　　　Michael T. Donovan

Dated: January 10, 2018